## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

JOHN WESLEY PHILLIPS,               )
                                    )
           Petitioner,             )
                                    )
        vs.                         )          **Case No. CIV-05-1296-M**
                                    )
DAVID C. MILLER,                    )
                                    )
           Respondent.             )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. A response to the petition has been filed, and Petitioner has not filed a reply within the time limits prescribed by the Court. Thus, the case is at issue. Pursuant to an order entered by United States District Judge Vicki Miles-LaGrange, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, it is recommended that the petition be denied.

By this action, Petitioner challenges his conviction following a jury trial for rape in the first degree, after former conviction of two felonies, for which he was sentenced to eighty-years imprisonment. Case No. CF-2001-566, District Court of Kay County. Petitioner filed a direct appeal, and the Oklahoma Court of Criminal Appeals affirmed. Petition, p. 2; Case No. F-2003-26, Oklahoma Court of Criminal Appeals (Summary Opinion, February 3, 2004) (attached to Petition as Ex. 1). Thereafter, Petitioner filed an application for state post-conviction relief, and the application was denied on June 24, 2005. Petition, p. 3; Case No. CF-2001-566 District Court of Kay County (Order Denying Application for Post-Conviction Relief, June 24, 2005 (attached to Petition as Ex. 2).

Petitioner appealed, and the Oklahoma Court of Criminal Appeals affirmed on October 28, 2005.  Case No. PC-2005-0710, Oklahoma Court of Criminal Appeals (Oct. 28, 2005) (Order Affirming Denial of Post-Conviction Relief) (attached to Petition as Ex. 3).

## I.  INTRODUCTION

On August 4, 2001, Gladys Phillips, Petitioner's step-mother, reported that she had been raped by Petitioner.  Ms. Phillips, then eighty-eight years old, subsequently suffered a stroke and was unable to testify at trial, resulting in the admission of her preliminary hearing transcript.  Her preliminary hearing testimony was introduced against Petitioner, who was convicted of rape, and sentenced to eighty-years imprisonment as a result of his prior felony convictions.  Additional facts will be set forth herein as necessary.

## II.  GROUNDS FOR RELIEF

Petitioner raises ten grounds for relief.  In Ground One, he alleges the State used perjured testimony to procure his conviction and withheld exculpatory evidence.  In Ground Two, he claims that he received ineffective assistance of trial counsel while in Ground Three, he alleges ineffective assistance of appellate counsel.  In Ground Four, he alleges that the trial court relied on two constitutionally infirm prior convictions to enhance his sentence.  In Ground Five, he asserts that he has a legitimate claim of innocence.  In Grounds Six and Seven, Petitioner contends that his rights were violated during state post-conviction proceedings as he was not provided with an evidentiary hearing or appointed counsel.  In Ground Eight he alleges his rights under the Confrontation Clause of the Sixth Amendment were violated when the victim's preliminary hearing testimony was admitted in her absence at trial.  For his Ground Nine,

Petitioner alleges the trial court erred in giving the jury a copy of the victim's preliminary hearing testimony to use during jury deliberations.  Finally, in Ground Ten, Petitioner alleges there was insufficient evidence to support his conviction.

## III.  STANDARD GOVERNING APPLICATIONS FOR A WRIT OF HABEAS CORPUS

For factual and legal issues that have already been adjudicated in state court, the Court may only grant a writ of habeas corpus if that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1) and (2).

A state court's determination is contrary to clearly established federal law where it applies a rule that contradicts the law set forth in Supreme Court cases, or  confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court's determination involves an unreasonable application of clearly established Supreme Court precedent if it identifies the correct governing legal principle from the Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  Id. at 413; see also Wiggins v. Smith, 539 U.S. 510, 520 (2003).  It is not enough that the state court applied clearly established federal law erroneously or incorrectly; the application must also be unreasonable.  Williams, 529 U.S. at 410-11; Valdez v. Bravo, 373 F.3d 1093, 1096 (10th Cir.), cert. denied, 543 U.S. 1008 (2004).

## IV.  DISCUSSION

### A.  GROUNDS ONE, TWO, THREE, FOUR, and FIVE

In Grounds One, Two, Three, Four, and Five, Petitioner brings claims raised for the first time in his application for state post-conviction relief.  In Ground One, Petitioner alleges that the State used perjured testimony to procure his conviction.  Brief in Support, p. 2-8.  In Ground Two, Petitioner's alleges that he was denied the effective assistance of trial counsel.  Brief in Support, p. 8-10.  In Ground Three, Petitioner alleges the ineffective assistance of appellate counsel.  Brief in Support, p. 11-14.  In Ground Four, Petitioner alleges that the trial court relied on constitutionally infirm prior convictions as a basis for enhancing his sentence.  In Ground Five, Petitioner alleges his actual innocence.  Brief in Support, p. 15-19.  Respondent contends that these claims were procedurally defaulted, because Petitioner failed to raise them on direct appeal.  In Ground Three, Petitioner is asserting his ineffective assistance of appellate counsel claim as cause to excuse the procedurally defaulted claims. Thus, as will be discussed below, the merits of each of these claims must be addressed.

In ruling on these claims in Petitioner's state post-conviction application, the state district court found that the claims regarding ineffective assistance of trial counsel, invalid use of prior convictions for the enhancement of punishment, the withholding of evidence and actual innocence were procedurally barred, and that Petitioner had not established ineffective assistance of appellate counsel.  See Order Denying Post-Conviction Relief (attached to Petition as Ex. 2).  On appeal, the Oklahoma Court of Criminal Appeals affirmed the state district court's decision that Petitioner had waived

any claims that could have been raised on direct appeal. Order Affirming Denial of Post-Conviction Relief, p. 2 (October 28, 2005) (attached to Response as Ex. 3).  It also affirmed the state district court's decision denying Petitioner's claim of ineffective assistance of appellate counsel, concluding that the record did not support Petitioner's claim.  Id. at 2.

## 1.    The Doctrine of Procedural Default

Respondent contends that federal habeas review of the claims contained in Grounds One, Two, Four and Five is barred by Petitioner's failure to raise the claims on direct appeal.  On habeas review, federal courts will not review claims that have been defaulted in state courts on an independent and adequate state procedural ground unless the petitioner demonstrates cause for the default and actual prejudice, or alternatively demonstrates a fundamental miscarriage of justice.  Bousley v. United States, 523 U.S. 614, 622 (1998); Sawyer v. Whitley, 505 U.S. 333, 338-339 (1992); Coleman v. Thompson, 501 U.S. 722, 750 (1991); Hickman v. Spears, 160 F.3d 1269, 1271 (10th Cir. 1998). "'A state court's finding is considered independent if it is separate and distinct from federal law.'" Klein v. Neal, 45 F.3d 1395, 1397 (10th Cir. 1995) (quoting Brecheen v. Reynolds, 41 F.3d 1343, 1353 (10th Cir. 1994)). "'A state court's finding is deemed to be adequate if it is applied evenhandedly; that is, if it is strictly or regularly followed.'" Id. (quoting Brecheen, 41 F.3d at 1353) (internal quotations omitted).

In Oklahoma, "post-conviction relief is reserved only for the rare set of circumstances where a particular claim 'could not have been raised on direct appeal.'" Brecheen, 41 F.3d at 1349 n. 4; see Okla. Stat. tit. 22, § 1086.  Here, it is clear that the

5

state courts applied this well-established procedural bar rule in denying review of Petitioner's procedurally-defaulted claims.  See Order Denying Post-Conviction Relief and Order Affirming Denial of Post-Conviction Relief, Petition, Exs. 2, 3.  The rule applied by the state district court and the Oklahoma Court of Criminal Appeals is thus independent of federal law. The Oklahoma Court of Criminal Appeals' procedural bar rule is generally an adequate state ground for refusing to review a prisoner's collateral claims that were not asserted in a direct appeal from a conviction. Odum v. Boone, 62 F.3d 327, 331 (10th Cir. 1995); Steele v. Young, 11 F.3d 1518, 1521-1522 (10th Cir. 1993).

In English v. Cody, 146 F.3d 1257, 1263-64 (10th Cir.1998), the Tenth Circuit held that a procedural rule requiring an ineffective assistance of trial counsel claim to be raised on direct appeal can be adequate only if (1) the Petitioner had different trial and appellate counsel; and (2) the ineffectiveness claim could have been resolved "upon the trial record alone."  In this case, Petitioner did have different counsel at trial and on appeal, Petition, p. 13, and the ineffectiveness claim could have been resolved by reference to the trial record.  Thus, Oklahoma's procedural bar rule is also adequate with regard to Petitioner's claim of ineffective assistance of trial counsel.

Petitioner can overcome the procedural bar only if he can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 750. "'Cause' must be 'something external to the petitioner, something that cannot fairly be attributed to him....'" Steele v. Young, 11 F.3d 1518, 1522 (10th Cir. 1993)(quoting Coleman, 501 U.S. at 753).

## 2.      Ineffective Assistance of Appellate Counsel

Petitioner contends that he did not raise the claims contained in Grounds One, Two, Four and Five on direct appeal due to the ineffective assistance of appellate counsel, an issue he also addresses in Ground Three.  Brief in Support of Petition, p. 11-14.  He claims that his appellate counsel failed to conduct adequate research to discover the issues and raise them on appeal.  Id.  "A showing that a defendant received ineffective assistance of counsel will establish cause excusing a procedural default," Ellis v. Hargett, 302 F.3d 1182, 1186 (10th Cir. 2002), but to meet this standard, Petitioner must satisfy the familiar two-part test for ineffective assistance established in Strickland v. Washington, 466 U.S. 668, 688 (1984). Under Strickland, Petitioner "must establish that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different." Hain v. Gibson, 287 F.3d 1224, 1231 (10th Cir. 2002). Application of Strickland to an ineffective assistance of appellate counsel claim requires the Court to "look to the merits of the omitted issue."  Id.

"[I]n analyzing an appellate ineffectiveness claim based upon the failure to raise an issue on appeal, 'we look to the merits of the omitted issue,' generally in relation to the other arguments counsel did pursue. If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential

consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance." Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) (citations omitted); accord Miller v. Mullin, 354 F.3d 1288, 1298 (10th Cir. 2004), cert. denied, 543 U.S. 1154 (2005). Unless there is a reasonable probability that the omitted claim would have resulted in Petitioner obtaining relief on appeal, there is no ineffective assistance of appellate counsel under the Sixth Amendment.  Neill v. Gibson, 278 F.3d 1044, 1057 n. 5 (10th Cir. 2001).

Before looking to the merits of the omitted claims here, it must be noted that the Oklahoma Court of Criminal Appeals has already addressed Petitioner's claim of ineffective assistance of appellate counsel.   The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) therefore confines the Court's review to the question of whether that decision were contrary to or involved an unreasonable application of Strickland. 28 U.S.C. § 2254(d)(1); see also Turrentine v. Mullin, 390 F.3d 1181, 1202 (10th Cir. 2004), cert. denied, 125 S. Ct. 2544 (2005).

### 3.    State's Use of Perjured Testimony

In Ground One, Petitioner alleges that the State knowingly used perjured testimony in obtaining his conviction.  Petitioner raised this issue for the first time during post-conviction proceedings, and the Oklahoma Court of Criminal Appeals declined to consider the merits of the claim.  Specifically Petitioner alleges that the testimony of the

victim was perjured, without offering any evidence thereof or any basis for concluding that the State knowingly used perjured testimony.[1]

The prosecution in a criminal case may not deliberately deceive the court or jury by presenting false testimony. See Mooney v. Holohan, 294 U.S. 103, 112 (1935). Petitioner bears the burden of proving that the prosecutor knowingly presented false testimony. See Smith v. Gibson, 197 F.3d 454, 460 (10th Cir.1999). "Contradictions and changes in a witness's testimony alone ... do not create an inference, let alone prove, that the prosecution knowingly presented perjured testimony." Tapia v. Tansy, 926 F.2d 1554, 1563 (10th Cir. 1991). Petitioner has failed to meet his burden of proving that the prosecutor knowingly presented false testimony in his case by failing in any manner to indicate what evidence or testimony he believed was perjured. Because Petitioner has failed to establish that the prosecution knowingly presented perjured testimony, appellate counsel was not ineffective in failing to raise the issue, and this claim should not be reviewed on habeas corpus because it is procedurally barred.

Within this claim Petitioner also alleges that the state withheld exculpatory evidence, which could violate Brady v. Maryland, 373 U.S. 83 (1963). Petitioner's contention is not entirely clear, but the Respondent interprets the argument as asserting that the State withheld evidence that Chad Phillips' semen was found in the victim's home.

---

[1] Petitioner devotes a substantial portion of this section of his brief to his Confrontation Clause claim, which will be addressed infra as Ground Eight. Petitioner's sufficiency of the evidence claim, which was also incorporated into his Ground One, will be considered infra as Ground Ten, in accordance with the petition and the brief in support.

In Brady, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. To establish a Brady violation, a habeas petitioner must show that "(1) the prosecutor suppressed evidence; (2) the evidence was favorable to the defendant as exculpatory or impeachment evidence; and (3) the evidence was material." Knighton v. Mullin, 293 F.3d 1165, 1172 (10th Cir. 2002)(citations omitted). Generally, evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Id.

From the phase I closing argument presented by Petitioner's trial counsel it is apparent that the State introduced evidence that the semen found on the bedspread belonged to Petitioner's son, Chad Phillips. Tr. Vol. II, p. 266.[2] Additionally, the State introduced the stipulated testimony that Chad Phillips' presence at a group home in Enid, Oklahoma was accounted for during the hours before, during, and after the rape. Response, Ex. 1, p. 31. Accordingly, Petitioner has failed to establish that the State withheld material exculpatory evidence. Because Petitioner has failed to establish a Brady violation, appellate counsel was not ineffective in failing to raise this issue, and the claim should not be reviewed on habeas corpus because it is procedurally barred.

[2] For some inexplicable reason pages of counsel's closing argument, including this page, were omitted from the transcript provided to the Court. However, this page and other pertinent pages missing from the transcript were attached to the Respondent's brief.

### 4.      Ineffective Assistance of Trial Counsel

In Ground Two, Petitioner argues that he was denied the effective assistance of trial counsel as guaranteed by the Sixth Amendment.   Brief in Support, p. 8-10. Specifically Petitioner contends that trial counsel was ineffective in failing to make an opening statement during the guilt phase of his trial and in failing to cross-examine witnesses offered by the State, instead stipulating to the testimony of certain witnesses. Petitioner further complains that counsel did not offer a defense by presenting any witnesses or evidence, and that he prohibited Petitioner from taking the stand to testify.[3] Finally, Petitioner complains that trial counsel's performance during the sentencing phase of his trial was ineffective, because he failed to make an opening statement or closing argument, and did not object to the prior convictions used to enhance his sentence.

### a.  Waiver of the Opening Statement in Phase I

Petitioner's first allegation of ineffective assistance of trial counsel is that trial counsel was ineffective because he waived his right to present an opening statement during the first stage of his trial, where the jury determined Petitioner's guilt.

Counsel's failure to make an opening statement does not itself constitute ineffective assistance of counsel.  See Nguyen v. Reynolds, 131 F.3d 1340, 1350 (10th Cir. 1997) ("Defense counsel's failure to make an opening statement was nothing more than a tactical decision that did not adversely affect [petitioner].") (citing United States v.

---

[3]Curiously, at page 3 of his brief in support, Petitioner alleges that he did not take the stand based on counsel's "ill advise."  He does not allege at what point that counsel prohibited him from taking the stand.

Haddock, 12 F.3d 950, 955 (10th Cir.1993) (failure to present opening statement itself is not ineffective assistance of counsel);  Fox v. Ward, 200 F.3d 1286, 1296 (10th Cir. 2000)("While opening and closing statements are not to be lightly waived in a capital case, it is well-settled that the decision to waive an opening or closing statement is a commonly adopted strategy, and without more, does not constitute ineffective assistance of counsel").  Here, Petitioner's trial counsel initially reserved his opening statement, but after the State rested, Petitioner's attorney announced the Petitioner also rested, and since he was calling no witnesses, he properly waived his opening statement.  Tr. Vol. I, p. 103, Vol II, p. 252-57.  Petitioner has not established that trial counsel's decision to waive opening statement was anything other than strategy, and accordingly, it was not ineffective assistance of appellate counsel to fail to raise this issue of ineffective assistance of trial counsel on direct appeal.  Therefore, this claim is procedurally barred.

### b.  Stipulating to the Testimony of State Witnesses

Petitioner's primary defense was that his step-mother had misidentified her attacker, a defense that counsel supported by inquiring of officers about the lighting conditions at Ms. Phillips' home, noting her failing memory, and by highlighting the absence of physical evidence that Petitioner was present at the scene, but noting the presence of Chad Phillips' semen on the bedspread from Ms. Phillips' house.  Tr. Vol. I, p. 117-19, 168-84; Vol. II, p. 236-47.  Then counsel emphasized these points in closing argument.  Tr. Vol. II, p. 266, 268, 270.  Counsel noted that Petitioner bore no signs of having struggled with Ms. Phillips, whose injured finger was bleeding when the police arrived.  Tr. Vol. II, p. 269, 270-71.  Counsel also challenged whether Ms. Phillips in fact

had been raped.  Tr. Vol. II, p. 267.  With this strategy in mind, the undersigned considers the content of the stipulated testimony about which Petitioner complains.

After initial review of the petition and response, the undersigned ordered the Respondent to provide copies of the stipulated testimony.  Having reviewed the testimony, the undersigned concludes that trial counsel was not ineffective in agreeing to the stipulated testimony, because none of the testimony linked Petitioner to the rape.

The only stipulated testimony that specifically referenced Petitioner was that of Joann G. Kihega, a criminalist for the Oklahoma State Bureau of Investigation.  According to her stipulated testimony, the probability of selecting an unrelated individual at random from the population having the same DNA as Petitioner was one in six billion in Caucasians, one in six billion in African Americans, and one in six billion in Hispanics. Although in isolation this testimony and the accompanying report completed by Ms. Kihega might appear incriminating, Petitioner's trial counsel noted during closing argument, the seminal fluid tested was taken from Petitioner's jeans, and thus it is unlikely that it would have belonged to any other person.   Tr. Vol. II, p. 269. Additionally, Bob Stieber of the Ponca City Police Department, testified that when Petitioner was arrested in his home, that Petitioner was not wearing pants, and that the jeans were on his floor.  Tr. Vol. II, p. 217, 240.  Officer Stieber assisted Petitioner in putting on the jeans. Tr. Vol. II, p. 217.  Additionally, Petitioner wore the jeans overnight while being detained before they were confiscated for DNA testing.  Tr. Vol. II, p. 217, 240-41.  There was no testimony that Petitioner was wearing the jeans containing his own DNA at the victim's home and Officer Stieber testified that there is no method for

13

determining when the semen was deposited on the jeans.  Tr. Vol. II, p. 241.  It would have been reasonable for the jury to conclude that the semen on Petitioner's jeans came from an act unrelated to the rape of Ms. Phillips.  Accordingly, trial counsel was not constitutionally ineffective in stipulating to the substance of Ms. Kihega's testimony when Petitioner presents no basis for challenging the substance of her testimony and accordingly appellate counsel was not ineffective in failing to raise the issue on direct appeal.  The remainder of the stipulated testimony about which Petitioner complains similarly provides no cause for concern regarding his counsel's performance.

Sergeant Earl Watkins' stipulated testimony was that he was called to the home at 218 North 7th Street in Ponca City on August 4, 2001, and that he established the crime scene and began monitoring who entered and exited the premises, and that he started a crime scene log after summoning an ambulance.  Andy Longoria's stipulated testimony was that he assumed the duties of maintaining the crime scene log from Sergeant Watkins.  Sergeant Henshaw's testimony indicates that he responded to the reported rape and based upon information he received from other officers, he maintained surveillance of the Petitioner's residence, which was the third house south from Ms. Phillips' house, to ensure that no one entered or left the home.  He also states that he assisted in taking Petitioner into custody, although he offers no evidence to support the theory that Petitioner was guilty of the crime of rape.  Detective Bohon's stipulated testimony indicates that he obtained evidence from the evidence vault and refrigerator of the Ponca City Police Department at the request of Detective Stieber, and transported the specified items to the Oklahoma State Bureau of Investigation's laboratory in

14

Oklahoma City.  He also states that he transported a sealed envelope containing Petitioner's oral swab to the lab.  Sarah Paschel, a criminalist with the Oklahoma State Bureau of Investigation, offered testimony that she found seminal fluids on the submitted bedspread and jeans, and that samples of the fabrics were sent for DNA testing.  She also detailed the methods for collecting and testing blood samples.  Her stipulated testimony did not include any findings about whose DNA was identified.

Finally, Tamera Bruner's stipulated testimony indicated that if she was called to testify, she would testify that Chad Phillips was present at the Sequoia Group Home in Enid from August 3, 2001 at 3:00 p.m. until 3:00 p.m on August 6, 2001.  She noted that he watched movies and was on good behavior from 3:00 p.m. until 11:00 p.m on August 4, 2001 and accounted for at the bed checks conducted every fifteen minutes from 11:00 p.m. on August 4, 2001 until 7:00 a.m on August 5, 2001.  She further noted that his last visitation pass had been utilized from July 3, 2001 until July 5, 2001, when he visited Ms. Phillips in her home.  Petitioner contends that if present for cross-examination that Ms. Bruner could have been questioned about the reliability of the logs utilized at the Sequoia Group Home, which he contends was a key point in light of the fact that Chad Phillips' semen was found on the bedspread taken from Ms. Phillips' home on the night of the rape.

There is no indication from any evidence presented by Petitioner that the records of the Sequoia Group were inaccurate, or that Chad Phillips could have disguised his absence on August 4, 2001, the date of Ms. Phillips' rape.  According to the facility's log, Chad Phillips was present from 3:00 until 11:00 p.m. and was present at each of the bed

checks performed every fifteen minutes between 11:00 p.m. and 7:00 a.m.  Petitioner's contention that cross-examination of Ms. Bruner would have yielded favorable information is mere speculation, and trial counsel was not ineffective in stipulating to her testimony.

For the reasons set forth above, Petitioner has failed to establish that trial counsel was constitutionally ineffective in stipulating to the testimony of the above witnesses. Because trial counsel was not ineffective, appellate counsel was not constitutionally ineffective in failing to raise the issue on direct appeal.  Therefore, habeas corpus review in this claim is barred.

### c.  Failing to Offer Witnesses or Evidence

Petitioner contends that trial counsel was constitutionally ineffective because he failed to present any witnesses or evidence on Petitioner's behalf, but he does not specify what evidence or witnesses should have been presented.  Petitioner's alleged alibi, a telephone call with Trilby Dickerson, was disproved by the State's presentation of Ms. Dickerson's telephone records, which established that his telephone call  ended at 10:14 p.m, 51 minutes before the rape was reported.  Tr. Vol. II, p. 234-35.  Petitioner does not specify what other evidence could have been offered by these unknown persons, and thus it is impossible to determine how trial counsel's performance was deficient or how Petitioner was prejudiced.  See Cannon v. Mullin, 383 F.3d 1152, 1165 (10th Cir. 2004), cert. denied, 544 U.S. 928 (2005) (A petitioner must explain how omitted witnesses would have aided the defense).  Petitioner's claim is barred because he has not

established a claim for the ineffective assistance of trial counsel that appellate counsel should have raised on direct appeal.

### d. Denying Petitioner his Right to Testify

Petitioner contends that his trial counsel was constitutionally ineffective in failing to permit him to testify in his own defense. Petitioner does not provide specific allegations that he voiced his desire to testify to counsel nor does he allege that counsel failed to inform him of his right to testify.

> A criminal defendant has a constitutional right to testify in his own behalf at trial. Rock v. Arkansas, 483 U.S. 44, 49-52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). The decision whether to testify lies squarely with the defendant; it is not counsel's decision. Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Defense counsel should inform the defendant that he has the right to testify and that the decision whether to testify belongs solely to him. See [United States v.] Teague, 953 F.2d [1525,]1533-34 [(11th Cir. 1992)]. Counsel should also discuss with the defendant the strategic implications of choosing whether to testify, and should make a recommendation to the defendant. See id. Yet counsel lacks authority to prevent a defendant from testifying in his own defense, even when doing so is suicidal trial strategy. See United States v. Janoe, 720 F.2d 1156, 1161 & n. 10 (10th Cir.1983).

Cannon, 383 F.3d at 1171. Pursuant to Strickland, Petitioner has not overcome the strong presumption that counsel's strategic decision falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689. It is apparent, Petitioner had prior convictions that would have subjected him to serious scrutiny on cross-examination, especially because one of Petitioner's prior convictions was for assault. As a result, Petitioner's conclusory allegations are insufficient to establish that but for counsel's strategic decision, the result of the proceedings would have been different. Id. at 694. Accordingly, Petitioner is not entitled to habeas corpus relief on this ineffective

assistance of trial counsel claim, and appellate counsel was not ineffective in failing to raise the issue on direct appeal.

### e. Trial Counsel's Phase I Closing Argument

Petitioner argues that trial counsel was constitutionally ineffective because his closing argument during the penalty phase was a mere formality. The undersigned disagrees. Trial counsel utilized his phase I closing argument to challenge whether Ms. Phillips had in fact been raped. Tr. Vol. II, p. 267. He challenged her memory, specifically referencing portions of her testimony where she was unable to recall historical facts, such as her age and the date she married Petitioner's father. Tr. Vol. II, p. 265-67. He highlighted the fact that in conjunction with her memory loss, the lighting conditions in her home on August 4, 2001 were poor, because the only light visible in the living room was provided by the kitchen light. Tr. Vol. II, p. 266. Counsel highlighted the fact that although Ms. Phillips stated that she pinched and scratched her attacker, Petitioner bore no markings that would indicate that he was pinched or scratched. Tr. Vol. II, p. 266, 269, 270. Counsel focused the jury on the fact that no physical evidence linked Petitioner to the rape. Tr. Vol. II, p. 266, 268, 270-71. In short, although Petitioner challenges trial counsel's closing argument as a mere formality, counsel directed the jury's attention to each of the shortcomings in the prosecution's case. Petitioner has failed to establish that trial counsel was ineffective in making this closing argument, and therefore appellate counsel was not ineffective in failing to raise the issue on direct appeal. Therefore, habeas corpus review of this claim is barred and relief should be denied.

### f.  Deficient Performance During the Penalty Phase

Petitioner contends that trial counsel was constitutionally ineffective during the penalty phase of his trial because he failed to offer an opening statement or closing argument, and he failed to challenge the State's use of his allegedly unconstitutional prior convictions.  As set forth *infra*, Petitioner has failed to establish that his prior convictions were constitutionally invalid, and therefore trial counsel was not constitutionally ineffective in failing to challenge the State's reliance on the prior convictions to support his eighty-year sentence, and appellate counsel was not ineffective in failing to raise the issue on direct appeal.

Additionally, with regard to counsel's failure to make an opening statement and closing argument in the penalty phase, the only evidence offered by the State during sentencing was the prior convictions, which were appropriately the subject of stipulation by trial counsel.  Petitioner does not argue what evidence could have been presented or what arguments could have been made so that trial counsel could have  downplayed the significance of his prior convictions, especially the conviction for assault and battery against his former spouse.  Thorough consideration of the circumstances of that conviction could have resulted in the introduction of more damaging testimony, the substance of which can be gleaned from references to the presentence investigation report contained in the sentencing transcripts in Case No. CF-99-608, where numerous references were made to complaints against Petitioner by former spouses involving his interest in deviant sex.

Additionally, there is no provision in Oklahoma law for a defendant in a non-capital case to present mitigating evidence to a sentencing jury. <u>Malone v. State</u>, 58 P.3d 208, 209 (Okla. Crim. App. 2002). The prosecutor did not ask for a specific sentence during his closing argument such that Petitioner's counsel could have requested a lesser sentence. Tr. Vol. II, p. 292-93. Further, trial counsel had to be cautious, because any argument that counsel could have made during the sentencing phase to downplay the significance of the crime for which Petitioner was convicted, might have permitted the State significant rebuttal during its second closing argument. Petitioner has not established that trial counsel was ineffective in this regard, and therefore appellate counsel was not constitutionally ineffective in failing to raise the issue. Accordingly, habeas corpus review of this claim should be barred.

**5.      Unconstitutional Prior Convictions**

In Ground Four, Petitioner argues that the trial court lacked jurisdiction and violated his due process rights by relying on two unconstitutional convictions in support of enhancement of his sentence in Case No. CF-2001-566. Petitioner did not raise this issue on direct appeal, and the Oklahoma Court of Criminal Appeals concluded during post-conviction proceedings that the issue was defaulted. Therefore, as with the above claims, Petitioner must establish cause and prejudice to overcome the procedural bar.

The first issue that must be considered is whether Petitioner is "in custody" for purposes of challenging his convictions from the District Court of Kay County, Case Nos.

CF-94-54 and CF-99-608.[4]  In <u>Lackawanna County District Attorney v. Coss</u>, 532 U.S. 394

(2001), the Supreme Court addressed whether a current sentence enhanced by a prior

allegedly unconstitutional expired sentence may be challenged under § 2254.  Although

it held that a prisoner serving such an enhanced sentence was "in custody," the Court

said:

> [O]nce a state conviction is no longer open to direct or collateral attack in
> its own right because the defendant failed to pursue those remedies while
> they were available (or because the defendant did so unsuccessfully), the
> conviction may be regarded as conclusively valid.  If that conviction is later
> used to enhance a criminal sentence, the defendant generally may not
> challenge the enhanced sentence through a petition under § 2254 on the
> ground that the prior conviction was unconstitutionally obtained.

532 U.S. at 403-04 (internal citation omitted).  "The only exceptions [to this general rule]

exist when: 1) counsel is not appointed in violation of the Sixth Amendment; or 2) no

channel of review is available through no fault of the petitioner."  <u>Broomes v. Ashcroft</u>,

358 F.3d 1251, 1254 (10th Cir.), <u>cert.</u> <u>denied</u>, 543 U.S. 1034 (2004).

From the exhibits provided by Respondent and from the docket sheets in

Petitioner's cases it is clear that he had counsel during his guilty pleas in both Case No.

CF-94-54 and Case No. CF-99-608, District Court of Kay County.  Furthermore, although

Petitioner contends that he was denied appellate counsel, he was informed in each case

of his right to an appeal and to the aid of appellate counsel, but did not take advantage

---

[4] The undersigned takes judicial notice of the fact that Petitioner is currently seeking an appeal out
of time in each of these cases to which he plead guilty so many years ago.  Petitioner did not provide this
information to the Court, it was discovered upon consideration of the docket sheets in those cases, available
from the Oklahoma State Courts Network Court Dockets Case Nos.  CF-94-54 and CF-99-608, District Court
of Kay County (accessed April 19, 2006).  The District Court of Kay County has denied relief in both cases,
and Petitioner has appealed those rulings to the Oklahoma Court of Criminal Appeals.  <u>See</u> Oklahoma State
Courts Network, Docket Nos. PC-2006-413 and PC-2006-414 (Okla. Crim. App.)(accessed April 19, 2006).
The initial motions necessarily indicate that Petitioner's time for appealing those convictions had run,
which is also established by the fact that he did not file a motion to withdraw his guilty plea in either case.

of his rights by timely seeking to withdraw his guilty plea in either case.  Petitioner cannot now challenge his decision to waive his right to appeal as being unknowing and involuntary, because that is not one of the exceptions enunciated in <u>Lackawanna</u> as a basis for challenging an expired conviction.  Accordingly, the undersigned recommends that habeas corpus relief be denied on this claim.

### 6.  Actual Innocence

In Ground Five, Petitioner alleges that he has a legitimate claim of innocence. Brief in Support, p. 19.  To the extent Petitioner argues that the evidence was insufficient to support his conviction the issue will be addressed <u>infra</u> with regard to Petitioner's Ground Ten.

The Tenth Circuit has made clear that "an assertion of actual innocence, although operating as a potential pathway for reaching otherwise defaulted constitutional claims, does not, standing alone, support the granting of the writ of habeas corpus."  <u>LaFevers v. Gibson</u>, 238 F.3d 1263, 1265 n. 4 (10th Cir.2001); <u>see</u> <u>also</u> <u>Herrera v. Collins</u>, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). Accordingly, Petitioner's request for habeas corpus relief should be denied on this claim.

### 7.  Fundamental Miscarriage of Justice

As established above, with regard to Petitioner's attempt to establish that ineffective assistance of appellate counsel provides cause to overcome his procedural default, his claim must fail.  None of the issues addressed above were meritorious, and

therefore counsel was not ineffective in failing to raise the issues.  Because Petitioner cannot show that ineffective assistance of appellate counsel will excuse his state court default, he must show that a fundamental miscarriage of justice will occur if the Court does not consider his defaulted claims here.  Coleman, 501 U.S. at 750.  The fundamental miscarriage of justice exception is, however, "an extremely narrow exception, implicated only in 'an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  Ballinger v. Kerby, 3 F.3d 1371, 1375 (10th Cir. 1993) (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).  "To prevail, [Petitioner] must identify evidence that affirmatively demonstrates his innocence."  Phillips v. Ferguson, 182 F.3d 769, 774 (10th Cir. 1999).  Petitioner has wholly failed to identify evidence which affirmatively demonstrates his innocence, despite his claim of actual innocence.  Accordingly, it is recommended that relief be denied on Grounds One, Two, Four and Five because Petitioner cannot overcome the procedural bar.

B.    **INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL**

The undersigned addressed Petitioner's ineffective assistance of appellate counsel claims above with regard to the issues that were omitted from Petitioner's direct appeal. Petitioner contends that he was denied the effective assistance of appellate counsel in other ways as well.  Generally Petitioner argues that the system of using public defenders from the Oklahoma Indigent Defender System creates a systemic problem because these attorneys have heavy caseloads and often fail to raise issues that have merit.  Petition, p. 12.  Petitioner also contends that appellate counsel should have sought the testimony of an expert witness regarding the impact of Parkinson's disease on a victim's mental status

and that he should have challenged the trial court's decision to permit the State to introduce the portion of the preliminary hearing transcript that contained Ms. Phillips' reference to an alleged rape by Petitioner when he was fourteen years old.

To the extent Petitioner argues that his appellate counsel was constitutionally ineffective because he failed to challenge the trial judge's decision to send the un-redacted version of Ms. Phillips' preliminary hearing transcript to the jury which included her testimony that Petitioner raped her when he was fourteen, his claims must fail. Contrary to Petitioner's asserts, the trial judge sent a redacted version of the preliminary hearing transcript to the jury, which did not include this testimony, consistent with the transcript read to the jury at Petitioner's trial. Tr. Vol. II, p. 283; Response, Ex. 11. Accordingly, appellate counsel was not constitutionally ineffective in failing to raise this issue on direct appeal and habeas corpus relief should be denied on this claim. Furthermore, with regard to each of these claims, Petitioner does not attempt to establish that he was prejudiced by appellate counsel's failure to raise the issue by arguing the merits of the omitted issue. Petitioner's bare allegations are insufficient to permit the undersigned to conclude either that appellate counsel's performance was deficient or that he was prejudiced thereby. Although the Court gives liberal construction to the filing of a pro se party, the "broad reading" of pro se complaints dictated by Haines, "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). "'[N]aked allegations' are not cognizable under § 2254[.]" Ruark v. Gunter, 958 F.2d 318 (10th Cir. 1992) (citing United States v. MacCollom, 426 U.S. 317

(1976)).  Petitioner's request for habeas corpus relief on the basis of the ineffective assistance of appellate counsel should be denied.

### C. VIOLATIONS DURING STATE POST-CONVICTION PROCEEDINGS

In Grounds Six and Seven, Petitioner alleges that his rights were violated during post-conviction proceedings by the District Court of Kay County's failure to provide him with an evidentiary hearing and appointed counsel.

In Ground Six, Petitioner alleges that he was deprived of his due process rights because the Oklahoma courts refused to grant him an evidentiary hearing.  Whether Petitioner was entitled to an evidentiary hearing in state court is solely a function of Oklahoma law, a decision that this Court will not review in the context of a petition for habeas corpus, which requires Petitioner to establish that he is in custody in violation of federal law.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Romano v. Gibson, 239 F.3d 1156, 1166 (10th Cir. 2001).  Accordingly, the undersigned recommends that habeas corpus be denied on Petitioner's Ground Six.

Ground Seven is clearly without merit, because there is no constitutional right to an attorney in state post-conviction proceedings. Coleman v. Thompson, 501 U.S. 722, 752 (1991).  As a result, the state courts did not deprive Petitioner of his constitutional rights by failing to appoint him counsel for his post-conviction proceedings.

Accordingly, the undersigned recommends that habeas corpus relief be denied on Petitioner's Ground Seven.

### D. CONFRONTATION CLAUSE VIOLATION

In Ground Eight, Petitioner contends that the victim's preliminary hearing testimony was improperly admitted in the absence of her presence at trial, in violation of his rights under the Confrontation Clause.  In response, Respondent relies on <u>Ohio v. Roberts</u>, 448 U.S. 56 (1980), in support of the theory that the admission of the transcript did not violate Petitioner's Confrontation Clause rights.  Respondent bases this argument on the theory that the Supreme Court's 2004 decision in <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), does not apply retroactively to cases on collateral review.  <u>See</u> <u>Brown v. Uphoff</u>, 381 F.3d 1219, 1227 (10th Cir. 2004), <u>cert.</u> <u>denied</u>, 543 U.S. 1079 (2005).

The Sixth Amendment's Confrontation Clause, made applicable to the States through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."  U.S. Const. Amend. VI.  "[T]he Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact."  <u>Coy v. Iowa</u>, 487 U.S. 1012, 1016 (1988).  "While the Confrontation Clause does not bar the admission of all hearsay, it 'reflects a preference for face-to-face confrontation at trial.'"  <u>Paxton v. Ward</u>, 199 F.3d 1197, 1207 (10th Cir. 1999) (quoting <u>Ohio v. Roberts</u>, 448 U.S. 56, 63 (1980), <u>abrogated by</u> <u>Crawford v. Washington</u>, 541 U.S. 36 (2004)).

In 2004, in <u>Crawford</u>, the Supreme Court altered the landscape of Confrontation Clause jurisprudence.  Therein the Supreme Court held that the Confrontation Clause

bars the introduction of testimonial hearsay against a criminal defendant, unless the declarant is unavailable and the accused has had a prior opportunity to cross-examine the declarant.  Contrary to Respondent's assertions, <u>Crawford</u> does apply in this case, because where a Supreme Court decision results in a new rule, that rule applies to all criminal cases still pending on direct review.  <u>United States v. Price</u>, 400 F.3d 844, 845 (10th Cir.), <u>cert</u>. <u>denied</u>, 126 S. Ct. 731 (2005).  The Supreme Court issued its ruling in <u>Crawford</u> on March 8, 2004.  Petitioner's conviction did not become final until May 3, 2004, ninety days after the denial of his direct appeal, when his time for seeking a writ of certiorari from the Supreme Court ended.  <u>Caspari v. Bohlen</u>, 510 U.S. 383, 390(1994)("A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.").  Therefore, because the Supreme Court issued a decision in <u>Crawford</u> before Petitioner's conviction became final, <u>Crawford</u> applies.  Furthermore, because the Oklahoma Court of Criminal Appeals did not consider this claim under <u>Crawford</u>, the undersigned must consider the claim on the merits, utilizing the <u>Crawford</u> standard.

Once it is determined that hearsay testimony has been introduced the question is whether the hearsay was testimonial in nature.  <u>See</u> <u>United States v. Summers</u>, 414 F.3d 1287, 1300 (10th Cir. 2005).  There can be no doubt that Ms. Phillips' preliminary hearing testimony was testimonial within the confines of <u>Crawford</u>, because although the Supreme Court refused to specify exactly what statements are testimonial, preliminary

hearing testimony was cited as always being testimonial in nature.  Crawford, 541 U.S. at 52.  The next issue requires consideration of one of the factors set forth in Roberts and continued by the Supreme Court into the Crawford analysis, whether the declarant was unavailable.  Id. at 59.

The District Court of Kay County held a hearing on this issue prior to permitting the State to rely on Ms. Phillips' preliminary hearing testimony.  The court concluded that Ms. Phillips was unavailable because of her physical disability, which had impaired her memory or mental abilities to some extent, so as to make testifying difficult or impossible, and maybe even physically threatening to her well-being.  Transcript of Hearing, Motion to Use Preliminary Hearing Testimony of Unavailable Witness, p. 5-6. Additionally, Petitioner does not dispute that Ms. Phillips was unavailable in that sense.

Finally, the question is whether Petitioner had an opportunity to cross-examine Ms. Phillips.  From the preliminary hearing transcript it is apparent that Petitioner's counsel had the opportunity to cross-examine Ms. Phillips and that he exercised his rights to conduct such examination.  Preliminary Hearing Transcript, p. 29-39, 41-43. In Crawford, the Supreme Court did not address the scope of cross-examination required in order to avoid a Confrontation Clause violation.  However, in Delaware v. Fensterer, 474 U.S. 15, 20 (1985),the Court noted that "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish."  In this case, Petitioner had an adequate opportunity for cross-examination of Ms. Phillips at the preliminary hearing, and the introduction of her preliminary hearing testimony in light of her

unavailability, did not violate Petitioner's rights under the Confrontation Clause. Accordingly, the undersigned recommends that habeas corpus relief be denied on this claim.

### E.  THE JURY AND THE PRELIMINARY HEARING TRANSCRIPT

In Ground Nine, Petitioner contends that the trial court erred in permitting the jury to have a copy of the victim's preliminary hearing transcript during deliberations.  On direct appeal the Oklahoma Court of Criminal Appeals concluded that although the jury should not have had unfettered access to the transcript during deliberations, that the probative value of the evidence outweighed the danger of undue emphasis.  Summary Opinion, p. 3.  Petitioner is entitled to relief on this claim only if he can establish that the Oklahoma Court of Criminal Appeals' decision was contrary to or an unreasonable application of clearly established federal law, as set forth by the Supreme Court.

In support of this claim Petitioner cites to United States v. Bennett, 75 F.3d 40 (1st Cir. 1996).  In Bennett, a federal criminal case, the Court concluded that it was not an abuse of the trial judge's discretion when he did not mandate that the jury hear additional testimony related to the testimony that the jury specifically requested read back.  Id. at 46.  First, Bennett does not support the proposition that sending the transcript to the jury in Petitioner's case was constitutional error.  Appellate review in a federal criminal case is not limited to whether there was constitutional error by the trial court.  In this habeas corpus claim under 28 U.S.C. § 2254, Petitioner must establish that the Oklahoma Court of Criminal Appeals' decision with regard to this claim was contrary to or an unreasonable application of clearly established federal law, as enunciated by the

Supreme Court.  Petitioner has not identified any such case, and the undersigned's independent research has revealed no such case to support Petitioner's claim.

To the extent Petitioner is arguing that Oklahoma violated its own law, as he did in requesting a rehearing from the Oklahoma Court of Criminal Appeals, his claim similarly must fail.  "If the state violated its own laws, [a petitioner] must show that the alleged violation of state law denied him due process under the Fifth and Fourteenth Amendments."  Aycox v. Lytle, 196 F.3d 1174, 1179 (10th Cir.1999) (citing Hicks v. Oklahoma, 447 U.S. 343, 346 (1980)).  In order to benefit from the rule in Hicks, a habeas petitioner must show that the alleged failure to apply state law was "arbitrary in the constitutional sense." Aycox, 196 F.3d at 1180  (quotation omitted).  Petitioner has not met this standard and therefore, the undersigned recommends that habeas corpus relief be denied on this claim.

## F.  SUFFICIENCY OF THE EVIDENCE

In Ground Ten, Petitioner argues that the evidence was insufficient to sustain his conviction for rape under Oklahoma law.  Respondent contends that the evidence was sufficient in light of the victim's identification of Petitioner as her rapist.

In reviewing the sufficiency of the evidence for purposes of habeas corpus relief, clearly established Supreme Court precedent provides that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Romano v. Gibson, 239 F.3d 1156, 1164  (10th Cir. 2001).  In applying this standard, the reviewing court may not

weigh conflicting evidence or consider the credibility of witnesses. Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993). Rather, the court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Id.

An even more limited review is required by 28 U.S.C. § 2254(d) where, as here, a habeas petitioner's sufficiency of the evidence challenge has already been decided on the merits in state court. Valdez v. Ward, 219 F.3d 1222, 1237 (10th Cir. 2000). Pursuant to § 2254(d), Petitioner is not entitled to relief unless the Oklahoma Court of Criminal Appeals' determination that there was sufficient evidence was unreasonable. Torres v. Mullin, 317 F.3d 1145, 1151 (10th Cir. 2003). "That amounts to deference squared." Torres v. Lytle, No. 03-2098, 2004 WL 103557 at *2 (10th Cir. Jan. 23, 2004).[5]

On direct appeal the Oklahoma Court of Criminal Appeals relied on Spuehler v. State, 709 P.2d 202 (Okla. Crim. App. 1985) in concluding that the evidence supported Petitioner's conviction. Speuhler is premised on Jackson. Accordingly the sole issue is whether the Oklahoma Court of Criminal Appeals' application of the law was unreasonable.

The primary evidence in this case was the preliminary hearing testimony of the victim, Ms. Phillips. Ms. Phillips testified that Petitioner raped her. Preliminary Hearing Tr. p. 18-19. The police officer who responded to the call on August 4, 2001, was told by Ms. Phillips that Petitioner, her son was the rapist.[6] Tr. Vol. I, p. 107. Ms. Phillips told the nurse that conducted the rape examination that Petitioner had raped her.

---

[5] This unpublished decision cited as persuasive authority pursuant to Tenth Circuit Rule 36.3.

[6] Petitioner is referred to as both Ms. Phillips' adopted son and her step-son.

Tr. Vol. I, p. 164.   There was testimony from that nurse that Ms. Phillips had vaginal injuries consistent with her report of rape.  Tr. Vol. I, p. 157-61.  Taken in the light most favorable to the prosecution, there was sufficient evidence to support Petitioner's conviction for rape, and the Oklahoma Court of Criminal Appeals' application of <u>Jackson</u> was not unreasonable.  Accordingly, the undersigned recommends that habeas corpus relief be denied on this claim.

## **RECOMMENDATION**

For these reasons, the undersigned recommends that the petition for writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by May 9, 2006, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  Petitioner is advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein.  <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 19th day of April, 2006.

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE